BETTY LOU GRAGG SMITH, ADMINISTRATRIX OF THE ESTATE OF SHAWN NICHOLAS GRAGG, AND THE STATE OF NORTH CAROLINA, EX REL. BETTY LOU GRAGG SMITH, ADMINISTRATRIX OF THE ESTATE OF SHAWN NICHOLAS GRAGG V. CLINTON IRA PHILLIPS AND WESTERN SURETY COMPANY

No. 9324SC719

(Filed 20 December 1994)

### 1. Sheriffs, Police, and Other Law Enforcement Officers § 13 (NCI4th)—sheriff's official immunity—waiver shown by bond and insurance

Waiver of a sheriff's official immunity may be shown by the county's purchase of liability insurance as well as by the existence of his official bond. Thus the liability of a sheriff for negligence in the performance of his official duties is not limited to the

SMITH v. PHILLIPS

[117 N.C. App. 378 (1994)]

amount of his bond where the county has purchased liability insurance which covers the sheriff. N.C.G.S. §§ 153A-435, 58-76-5.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90 et seq.**

**Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.**

2. **Jails, Prisons, and Prisoners § 70 (NCI4th)— inmate threat to self—jailers on notice—no summary judgment in negligence action**

The trial court did not err in denying defendant sheriff's motion for summary judgment in an action for negligence in a jail inmate's death by suicide where plaintiff's forecast of evidence was sufficient to support a finding by the jury that the county jailers were on notice that the decedent posed a threat to himself but failed to take adequate measures to safeguard the inmate.

**Am Jur 2d, Penal and Correctional Institutions §§ 174 et seq.**

**Civil liability of prison or jail authorities for self-inflicted injury or death of prisoner. 79 ALR3d 1210.**

Appeal by defendants from order entered 5 May 1993 by Judge Charles C. Lamm, Jr., in Avery County Superior Court. Heard in the Court of Appeals 23 March 1994.

On 29 August 1991, plaintiff filed suit against defendant Phillips, the Avery County Sheriff, for negligence resulting in the death of Shawn Gragg, who was an inmate at the Avery County Jail, and joined Western Surety Company, the issuer of Phillips' official bond, as a defendant. Defendants answered plaintiffs' amended complaint, asserting, among other things, governmental immunity to the extent that the County's immunity had not been waived by the purchase of liability insurance and qualified immunity.

On 13 April 1993, defendants filed a motion for summary judgment based on their public official's immunity defense, their governmental immunity defense and their contention that the plaintiff failed to present sufficient evidence to prove each element of her negligence claim. On 5 May 1993, the trial court denied defendants' motion for summary judgment. From this denial, defendants appeal.

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Robert C. Ervin, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, by Tyrus V. Dahl, Jr. and Lawrence Pierce Egerton, for defendant-appellants.*

McCRODDEN, Judge.

At the outset we note that appeals from denial of motions for summary judgment, such as the instant one, are interlocutory and typically not allowed because they do not affect a substantial right of the parties. *Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978). However, when the motion is made on the grounds of sovereign and qualified immunity, such a denial is immediately appealable, because to force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity. *Corum v. University of North Carolina*, 97 N.C. App. 527, 532, 389 S.E.2d 596, 599 (1990), *rev'd in part on other grounds*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 61 U.S.L.W. 3369, 121 L. Ed. 2d 431 (1992). In the case *sub judice*, defendants have asserted a claim of governmental immunity and, therefore, their appeal is properly before this Court.

Relying upon two assignments of error, defendants present two arguments for our consideration: (I) the trial court erred in denying defendants' summary judgment motion based upon governmental immunity; and (II) the trial court erred in failing to grant the defendants' motion for summary judgment on the grounds that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. We reach only the first of these questions.

I.

[1] Defendants first argue that summary judgment should have been granted as to plaintiffs' claims regarding damages in excess of the sheriff's bond. They contend that because sheriffs are subject to official bonds, defendant Phillips may only be liable for negligence in the performance of his official duties to the extent of his official bond, regardless of the county's purchase of liability insurance. We disagree.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a mat-

ter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). The movant bears the burden of establishing that no triable issue exists, and he may do this by "proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989).

Absent waiver or consent, the doctrine of sovereign immunity provides the State, its counties, and its public officials with absolute and unqualified immunity from suits against them in their official capacities. *Messick v. Catawba County*, 110 N.C. App. 707, 714, 431 S.E.2d 489, 493, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993); *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. 168, 172-73, 118 S.E.2d 792, 795 (1961). The general rule is that a public official is immune from suit in his individual capacity for negligence in the performance of his duties unless his alleged actions were corrupt or malicious, or he acted outside the scope of his employment. *Thompson Cadillac-Oldsmobile, Inc. v. Sink Hope Automobile Inc.*, 87 N.C. App. 467, 469, 361 S.E.2d 418, 420 (1987), *disc. review denied*, 321 N.C. 480, 364 S.E.2d 672 (1988). It is generally established that a sheriff is a public official entitled to sovereign immunity and, unless the immunity is waived pursuant to a statute, is protected from suit against him in his official capacity. *Slade v. Vernon*, 110 N.C. App. 422, 426, 429 S.E.2d 744, 746 (1993).

Here, plaintiffs have alleged only that defendant Phillips was negligent in the performance of his official duties. Plaintiffs make no allegations of malicious or corrupt action, actions outside the scope of defendant's duties, or gross negligence. Thus, defendant Phillips, as a public official, may not be sued unless his immunity has been waived somehow.

Counties may waive their governmental immunity for injuries arising out of the negligent or wrongful performance of governmental functions by the purchase of liability insurance. N.C. Gen. Stat. § 153A-435 (1991). Initially, we note that Avery County's liability insurance policy through the North Carolina Counties Liability and Property Insurance Pool Fund explicitly includes the office of county sheriff within the terms of its coverage. While not dispositive of the issue in this case, this does show that Avery County, at least, anticipated that it might be liable for its sheriff's negligence.

Relying on *Messick* and *Slade*, defendants contend that the only applicable waiver of immunity against a sheriff sued in his official capacity is N.C. Gen. Stat. § 58-76-5 (1991), which provides:

Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State . . . and every such officer and the sureties on his official bond shall be liable to the person injured for all acts done by said officer by virtue or under color of his office.

However, we believe neither case supports defendants' argument.

In *Messick*, the plaintiff filed a cause of action against Catawba County, the sheriff of Catawba County, two of the sheriff's officers, and the Catawba County Board of Commissioners, alleging among other things, negligence on the part of the sheriff and his officers in investigating a child abuse allegation. 110 N.C. App. at 712, 431 S.E.2d at 492. The plaintiff appealed from the trial court's order of summary judgment for the defendants. Noting that the plaintiff did not contend, nor did anything in the record indicate, that the County had purchased liability insurance, the Court held that the action against the County and the County Commissioners was barred by governmental immunity. *Id.* at 714, 431 S.E.2d at 494. The Court then turned to the issue of the sheriff and the officers sued in their official capacities, holding that the bond statute removed the sheriff from the protection of governmental immunity, but only where the surety is joined as a party to the action. *Id.* at 715, 431 S.E.2d at 494.

In *Slade*, the plaintiffs brought suit against both the Sheriff and Chief Jailer of Rockingham County for various acts of negligence. 110 N.C. App. at 424, 429 S.E.2d at 745. The trial court denied defendant's motion for summary judgment based on the immunity defenses, and defendants appealed. In its opinion, this Court gave as an example of a waiver of governmental immunity the County's purchase of liability insurance pursuant to N.C.G.S. § 153A-435. *Id.* at 426, 429 S.E.2d at 746. However, the Court did not analyze the defendants' immunity with respect to this statute, but looked instead to N.C.G.S. § 58-76-5, holding that through this legislation the General Assembly had provided for a cause of action against a sheriff or other officer and his surety. *Id.* Again, there was nothing in the record on appeal in *Slade* to indicate that the county had purchased liability insurance.

Defendant claims that because this Court did not address the governmental immunity issue under section 153A-435 in either *Messick* or *Slade*, it concluded that section 58-76-5 was the only means to effect a waiver of a sheriff's governmental immunity. This does not follow. In both cases, the Court simply turned to the only means available to waive immunity, in the absence of evidence of the purchase of liability insurance. We believe the bond is not the only way to waive immunity as to the negligence of sheriffs and other bonded county officers.

The legislature has prescribed two ways for a sheriff to be sued in his official capacity. Pursuant to N.C.G.S. § 58-76-5, a plaintiff may maintain a suit against a sheriff or other officer and the surety on their official bond for acts of negligence in the performance of their official duties. *William v. Adams*, 288 N.C. 501, 219 S.E.2d 198 (1975). This statute, which works to remove the sheriff from the shield of governmental immunity, has existed for over two centuries. The purpose of the bond was, and still is, to ensure that all persons are made secure in their rights and have an adequate remedy for wrongs done to them. *Kivett v. Young*, 106 N.C 567, 569, 10 S.E. 1019, 1020 (1890).

In 1955, the General Assembly adopted further legislation by which a county may waive its immunity from tort liability to the extent that it has purchased liability insurance for negligence caused by an act or omission of the county or any of its officers, agents, or employees when performing government functions. N.C. Gen. Stat. § 153-9(44) (1955) (current version at N.C.G.S. 153A-435). North Carolina courts, in applying this statute, have held that a police officer may be held liable to the extent that insurance has been purchased. *Fowler v. Valencourt*, 108 N.C. App. 106, 113, 423 S.E.2d 785, 789 (1992), *rev'd in part on other grounds*, 334 N.C. 345, 435 S.E.2d 530 (1993).

Nowhere in this more recent enactment did the legislature expressly or impliedly provide that this statute does not waive governmental immunity as to an official already covered by a mandatory official bond. Rather, we find that when considered in light of the strong trend toward limiting governmental immunity, this latter provision serves to complement the purpose of the bond statute, insuring an adequate remedy for wrongs done to the plaintiff if, as might be found in this case, the bond does not provide an adequate remedy. *See Casey v. Wake County*, 45 N.C. App. 522, 523, 263 S.E.2d 360, 361, *disc. review denied*, 300 N.C. 371, 267 S.E.2d 673 (1980); *Smith v.*

*State*, 289 N.C. 303, 311, 222 S.E.2d 412, 418 (1976); *Lyon & Sons, Inc. v. Board of Education*, 238 N.C. 24, 27, 76 S.E.2d 553, 555 (1953). To hold as defendants suggest could leave some plaintiffs who have suffered genuine injury from a sheriff's negligent performance of his duties without adequate redress. We believe that this could not have been the intention of the legislature. Therefore, we conclude that waiver of a sheriff's official immunity may be shown by the existence of his official bond as well as by his county's purchase of liability insurance. Since plaintiff in this case alleged and offered proof of Avery County's liability insurance policy, the trial court properly denied defendants' motion to dismiss based upon governmental immunity.

II.

The balance of defendants' issues are unrelated to the issue of immunity and defendants have failed to demonstrate how any substantial right would be affected if these issues are not reviewed now. *See Waters v. Personnel, Inc.*, 294 N.C. 200, 240 S.E.2d 338 (1978). Nevertheless, in the interest of judicial economy, we exercise our discretionary power to suspend the rules pertaining to interlocutory appeals and address the remainder of defendants' appeal. N.C.R. App. 2.

[2] Defendants argue that the trial court erred in denying their motion for summary judgment because there was a "complete absence" of evidence to show that the jailers were aware of the likelihood of the decedent's suicide. We disagree.

A prison officer may be held liable when he knows of, or in the exercise of reasonable care should anticipate, danger to his prisoner and fails to take adequate measures to safeguard the prisoner, *Williams v. Adams*, 288 N.C. 501, 504, 219 S.E.2d 198, 200 (1975), and a jailer may be held liable for the suicide of a prisoner if he had knowledge, or reason to know, that the prisoner was a danger to himself and failed to take adequate precautions. *Helmly v. Bebber*, 77 N.C App. 275, 335 S.E.2d 182 (1985).

Summary judgment is not favored in negligence cases, particularly in cases such as this one, in which the foreseeability of a prisoner's suicide is generally an issue for the jury. *Id.* at 280-81, 335 S.E.2d at 186. When facing a motion for summary judgment, the trial court must consider all the evidence in the light most favorable to the non-movant, giving him the benefit of every doubt and drawing every rea-

sonable inference in his favor. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971).

In the light most favorable to plaintiff, the forecast of evidence reveals the following: Shawn Gragg, a seventeen-year-old, was an inmate at the Avery County Jail pending charges from 3 August 1990 until his death by suicide on 18 September 1990. On 18 September 1990, at approximately 4:30 p.m., jailer Patrick Tolley was making his rounds when Gragg asked to speak to another officer, Mark Phillips. Gragg also stated that he would like to take a shower later that afternoon. Tolley informed Gragg that he would speak to Phillips and would return in a few minutes to take Gragg for his shower. When Tolley returned approximately twenty-four minutes later, he discovered that Gragg had hanged himself with a sheet.

The Avery County Jail Manual provided that officers should:

[R]outinely observe all inmates, especially those newly admitted or just sentenced, for abnormal behavior indicative of potential suicide, such as:

1. Depression
2. Sleeping difficulties
3. Withdrawal from others
4. Apathy, despondency
5. Slow walking
6. Slumped sitting
7. Frequent crying
8. Easily fatigued
9. Weight loss
10. Loss of appetite
11. Talks of suicide
12. Sudden mood changes
13. Agitation
14. Overt psychosis

Although these indicia are not dispositive of the standard of care, they are significant in that they show what defendant considered to be outward manifestations of a suicidal intent, and represent some evidence of what a reasonable jailer would have observed in a pris-

**SMITH v. PHILLIPS**

[117 N.C. App. 378 (1994)]

oner. *See Slade v. Board of Education*, 10 N.C. App. 287, 296, 178 S.E.2d 316, 321-322, *cert. denied*, 278 N.C. 104, 179 S.E.2d 453 (1971). Plaintiff presented evidence tending to show that the decedent had exhibited at least four of these indicia.

Several witnesses who visited the decedent in jail testified that they believed that he was depressed. Decedent's mother testified that she asked jail officials to keep an eye on him.

Dawn Dellinger (Dellinger), a friend of the decedent who had been his seventh grade teacher, averred in her affidavit that decedent had called her on several occasions at night and had told her that he had been having difficulty sleeping.

Prior to his death, the decedent had been confined to an isolation cell. Dellinger stated that decedent had told her that "he was going nuts because of being kept off by himself."

There was evidence that the decedent had cried while incarcerated. One of his jailers testified that she had seen decedent cry, and Dellinger stated that the decedent had been crying during at least half of the telephone conversation she had had with him while he was in jail.

Each of these behaviors was observable by the jailers, who presumably supervised decedent at all times.

We conclude that plaintiff's forecast of evidence was sufficient to support a finding by the jury that the Avery County jailers were on notice that the decedent posed a threat to himself and the trial court properly denied summary judgment on that ground.

We affirm the order of the trial court.

Affirmed.

Judges EAGLES and MARTIN concur.

Opinion written and concurred in prior to 16 December 1994.