WILSON MYERS, Administrator of The ESTATE OF TIMOTHY JAMES TICKLE, and CYNTHIA MYERS, Plaintiffs v. BILLY BRYANT, Sheriff of Lee County, North Carolina, and LEE COUNTY, NORTH CAROLINA; and FIDELITY and DEPOSIT COMPANY OF MARYLAND, Defendants[1]

No. COA07-285

(Filed 5 February 2008).

**Police Officers— death of prisoner—sheriff's sovereign immunity**

The trial court did not err by denying a sheriff's motion for summary judgment based on sovereign immunity in an action which arose from a prisoner's death from cocaine poisoning while in custody. Plaintiffs' negligence claims in excess of the sheriff's bond were not barred by exclusions to the North Carolina Counties and Property Insurance Pool Fund.

Appeal by defendant from order entered 5 December 2006 by Judge Franklin F. Lanier in Superior Court, Lee County. Heard in the Court of Appeals 16 October 2007.

*West & Smith, LLP, by Stanley W. West, for plaintiffs-appellees.*

*Womble Carlyle Sandridge & Rice, PLLC, by James R. Morgan and Bradley O. Wood, for defendant-appellant Bryant.*

WYNN, Judge.

The "waiver of a sheriff's official immunity may be shown by the existence of his official bond as well as by his county's purchase of liability insurance."[2] Here, Defendant Billy Bryant argues the trial court erred by denying him summary judgment on Plaintiffs' claims that were in excess of the amount of his official bond, because the county's liability insurance policy excludes coverage for Plaintiffs' claims. We agree with the trial court that Plaintiffs' claims are not excluded from coverage by the insurance policy; accordingly, we affirm the trial court's denial of summary judgment.

On 18 January 2004, Timothy Tickle, age 34, left a halfway house in Dunn, North Carolina. The next day, Mr. Tickle's mother, Cynthia

---

1. On 5 December 2005, the trial court issued an order allowing plaintiffs to amend their complaint to add Fidelity and Deposit Company of Maryland as a defendant.

2. *Smith v. Phillips*, 117 N.C. App. 378, 384, 451 S.E.2d 309, 314 (1994).

Myers, picked him up from a local service station and took him to the Lee County Jail, which she was obligated to do because his bond required him to be at a treatment facility or in custody.

At the Lee County Jail, Officers Christopher Black and B.J. Gardner responded to a call for assistance with Mr. Tickle. Both officers stated that Mr. Tickle appeared intoxicated. Ms. Myers told Sergeant Benjamin Greene, Jr., who was on duty at the Lee County Jail, that Mr. Tickle may have taken some of her pills and was tired because he had probably not slept since Thursday night, four days before, and had walked approximately twenty-five miles from Dunn to Broadway, North Carolina.

Because Mr. Tickle appeared impaired, Sergeant Greene dispensed with the normal in-processing procedures, including an Inmate Medical Screening Form, on which he wrote "under the influence, unable to do anything." In her deposition, Ms. Myers stated that she had no reason to think her son was in a state of medical emergency when she took him to Lee County Jail.

After being placed in an isolation cell, Mr. Tickle fell asleep. Sergeant Greene testified that because of Mr. Tickle's medical condition, it would have been wrong not to put him on a quarter-hour watch. Accordingly, Sergeant Greene personally made rounds in addition to the normal rounds made twice an hour. During rounds, Sergeant Greene and other officers, including Officer Kevin Richard Zastzabski, observed Mr. Tickle sleeping, snoring loudly, and moving around. Once Sergeant Greene's shift ended between 5:30 and 5:45 a.m., he told the sergeant on the next shift, Sergeant Charles Richardson, that Mr. Tickle had been brought in during the night and was high on something. At his deposition, Sergeant Richardson testified that he was not told that Mr. Tickle was on a fifteen minute watch.

Throughout the morning of 20 January, various officers continued to observe Mr. Tickle snoring loudly and moving around; but, at approximately 2:35 p.m., Officer Kimberly M. Kruger found Mr. Tickle not breathing. An hour later, he was pronounced dead as the result of a cardiac arrest from cocaine poisoning.

In December 2005, Wilson Myers, administrator of the estate of Mr. Tickle, and Ms. Myers ("Plaintiffs") brought an action against Billy Bryant, formerly the elected Sheriff of Lee County ("Defendant"), in his official capacity, asserting claims for wrongful death and

negligent infliction of emotional distress. Though Plaintiffs also brought suit against Lee County, and against Defendant for punitive damages, they voluntarily dismissed those claims in November 2006.

On 27 November 2006, a hearing was held on Defendant's motion for summary judgment and on Plaintiffs' motion to amend their complaint. On 5 December 2006, the trial court issued an Order allowing Plaintiffs to amend their complaint to add Fidelity and Deposit Company of Maryland, the surety on Defendant's official bond, as a defendant. On 11 December 2006, the trial court denied Defendant's motion for summary judgment.

On appeal, Defendant solely contends that the trial court erred by denying his motion for summary judgment. Specifically, Defendant argues that sovereign immunity entitles him to summary judgment as a matter of law to the extent Plaintiffs seek to recover damages in excess of $25,000, the amount of his official bond. Though interlocutory, Defendant's appeal from the denial of summary judgment is properly before this Court because "orders denying dispositive motions grounded on the defense of sovereign immunity are immediately reviewable as affecting a substantial right." *Hedrick v. Rains*, 121 N.C. App. 466, 468, 466 S.E.2d 281, 283, *reh'g denied*, 343 N.C. 511, 472 S.E.2d 8, *aff'd*, 344 N.C. 729, 477 S.E.2d 171 (1996).

The standard of review from the denial of summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). Though we view the evidence presented by the parties in the light most favorable to the non-movant, where the movant establishes a complete defense to the plaintiff's claim, such as sovereign immunity, summary judgment is appropriate. *Overcash v. Statesville City Bd. of Educ.*, 83 N.C. App. 21, 26, 348 S.E.2d 524, 528 (1986).

The doctrine of sovereign immunity provides the State, its counties, and its public officials with absolute and unqualified immunity from suits against them in their official capacity. *Smith v. Phillips*, 117 N.C. App. 378, 381, 451 S.E.2d 309, 312 (1994). Thus, as to county sheriffs, "[i]t is generally established that a sheriff is a public official entitled to sovereign immunity and, unless the immunity is waived pursuant to a statute, is protected from suit against him in his official capacity." *Id.*

Our Legislature has prescribed two ways for a sheriff to be sued in his official capacity, thus waiving sovereign immunity. *Id.* at 383, 451 S.E.2d at 313. First, under section 58-76-5, a plaintiff may sue a sheriff and the surety on his official bond for acts of negligence in the performance of official duties. *Id.*; N.C. Gen. Stat. § 58-76-5 (2005) ("Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State . . . ."). Our General Statutes require all sheriffs to purchase a bond not to exceed $25,000. N.C. Gen. Stat. § 162-8 (2005).

Second, a sheriff may be sued in his official capacity under section 153A-435. *Smith*, 117 N.C. App. at 383, 451 S.E.2d at 312; N.C. Gen. Stat. § 153A-435 (2005). Section 153A-435 permits a county to purchase liability insurance, which includes participating in a local government risk pool, for negligence caused by an act or omission of the county or any of its officers, agents, or employees when performing government functions. *Id.* § 153A-435(a). The "[p]urchase of insurance under this subsection waives the county's sovereign immunity, to the extent of insurance coverage . . . ." *Id.*

Where a sheriff is covered by his county's liability insurance purchased pursuant to section 153A-435(a) and his official bond, the county's liability insurance "serves to complement the purpose of the bond statute, insuring an adequate remedy for wrongs done to the plaintiff if . . . the bond does not provide an adequate remedy." *Smith*, 117 N.C. App. at 383, 451 S.E.2d at 314.

Here, Defendant does not dispute that his immunity is waived for Plaintiffs' claims up to $25,000, the amount of his official bond purchased pursuant to N.C. Gen. Stat. § 162-8. Rather, this appeal addresses whether the Plaintiffs' claims in excess of $25,000 are covered under the North Carolina Counties and Property Insurance Pool Fund ("Fund"), sponsored by the North Carolina Association of County Commissioners. As a participant in the Fund, Lee County's insurance policy provides coverage for law enforcement liability, including sheriffs, in the amount of up to $2,000,000 per occurrence. The Coverage Agreement states that the Fund will pay on behalf of a participant or covered person all sums which they are legally obligated to pay because of an occurrence resulting in personal or bodily injury or property damage. Defendant contends the Fund excludes coverage for Plaintiffs' claims.

Plaintiffs claim, in their complaint, that Defendant was negligent:

(a) In failing to exercise due care for the safety of Tim Tickle under the circumstances;

(b) In violating the standards and duties established by the Sheriff's written rules and procedures, as aforesaid;

(c) In failing to train and supervise employees and agents of the Sheriff's Department in a manner to require adherence to the Sheriff's written rules and procedures;

(d) In violating the provisions of N.C. Gen. Stat. § 153A-224;

(e) In such other ways as may be shown by discovery and trial of this matter.

Defendant contends that Plaintiffs' claims in excess of $25,000 are excluded from coverage under the following insurance policy exclusions applicable to "Law Enforcement Employees":

This coverage does not apply to any claim as follows:

4. any claim for damages arising out of fraudulent, dishonest, or criminal behavior, including the willful violation of a penal statue or ordinance committed by or with the knowledge or consent of the Participant, and claims or injury arising out of the willful, intentional or malicious conduct of any Covered Person;

. . .

8. any claim for the acts of any Covered Person while engaged in any form of health care or ambulance services, except for first aid as specifically defined and limited herein;

9. any claim based on or arising out of any alleged failure to provide police protection sufficient and/or adequate to prevent the happening of any Occurrence resulting in injury, Property Damage, property loss, or any consequential loss therefrom[.]

In interpreting an insurance policy, "provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). If an insurance policy is not ambiguous, we must "enforce the policy as written and [] not remake the policy under the guise of interpreting an ambiguous pro-

vision." *Doe v. Jenkins*, 144 N.C. App. 131, 134, 547 S.E.2d 124, 127 (2001), *review dismissed and denied*, 355 N.C. 284, 560 S.E.2d 798 (2002).

Defendant first argues that Plaintiffs' negligence claims are barred by exclusion number four of Lee County's policy, which bars claims "for damages arising out of . . . criminal behavior." In their complaint, Plaintiffs allege that Defendant was negligent by violating N.C. Gen. Stat. § 153A-224 (2005), a Class 1 misdemeanor. Although Lee County's policy excludes claims arising out of criminal behavior, Plaintiffs allege various other grounds for Defendant's negligence, including the failure to exercise due care and the violation of standards established by the Sheriff's written rules. Because Plaintiffs did not base their negligence claims solely on damages arising out of criminal behavior, we cannot conclude that Plaintiffs' claims are barred by exclusion number four.

Defendant also argues that Plaintiffs' negligence claims are barred by exclusion number eight of Lee County's policy, which bars claims for the acts of a covered person "while engaged in any form of health care . . . except for first aid." In their complaint, Plaintiffs argue that the rules and policies of the Sheriff's Department were violated, because "at no time did the employees of the Sheriff's Department provide or attempt to provide any medical examination" to Mr. Tickle. Essentially, Plaintiffs are arguing that Defendant failed to provide medical care to Mr. Tickle.[3]

The plain language of exclusion number eight bars claims for acts that occur while *engaged in* any form of health care, not claims based on the alleged failure to provide health care. Neither party argues that Defendant was engaged in providing health care to Mr. Tickle. Rather, the dispute is over whether Defendant failed to administer medical care or failed to procure a medical evaluation. Either way, there is no evidence that Defendant was engaged in health care. Accordingly, we cannot conclude that Plaintiffs' claims are barred by that exclusion.

Defendant lastly argues that Plaintiffs' negligence claims are barred by exclusion number nine of Lee County's policy, which bars claims "based on or arising out of any alleged failure to provide police

---

3. In their brief, Plaintiffs note that they are not arguing that Defendant failed to administer medical care, but rather failed to obtain a medical evaluation of Mr. Tickle. However, Plaintiffs' own expert witness, Dr. Richard Serra, testified that Defendant failed to provide proper medical care to Mr. Tickle. Additionally, he testified that he considered a medical evaluation to be a form of medical care.

**MYERS v. BRYANT**

[188 N.C. App. 585 (2008)]

protection." In their complaint, Plaintiffs allege that by accepting Mr. Tickle into custody, Defendant created a special relationship and "made a promise of protection," the combination of which represented an exception the public duty doctrine. Defendant construes this language as barring Plaintiffs' claims under exclusion number nine of Lee County's insurance policy.

To determine whether exclusion number nine applies, we must determine whether Plaintiffs' claims are "based on or arising out of" Defendant's failure to provide police protection. In their complaint, Plaintiffs primarily base their negligence claims on Defendant's violation of standards and duties established by the Sheriff Department's written rules and failure to exercise due care under the circumstances. Although Plaintiffs mention a promise of protection, that statement occurs in the context of a discussion about the public duty doctrine, not as a basis for or cause of Plaintiffs' negligence claims. Accordingly, in considering the evidence in the light most favorable to Plaintiffs, we cannot conclude that their claims are barred under exclusion number nine.

In sum, because Defendant has failed to establish sovereign immunity for Plaintiffs' claims exceeding $25,000, we uphold the trial court's denial of summary judgment. *See Overcash*, 83 N.C. App. at 26, 348 S.E.2d at 528.

Affirmed.

Judges STEELMAN and GEER concur.