IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-523

No. COA20-218

Filed 5 October 2021

Wilson County, No. 17 CVS 1579

CONNIE BUTTERFIELD and TRACIE CAVENESS as Co-Administrators of the ESTATE OF TODD L. CAVENESS, Plaintiffs,

v.

HAYLEE GRAY, RN, SOUTHERN HEALTH PARTNERS, INC., VICKIE SHAW, R.T. ADCOCK, SHERIFF CALVIN WOODARD, JR., WILSON COUNTY, and HARTFORD FIRE INSURANCE COMPANY, Defendants.

Appeal by Defendants Vickie Shaw, R.T. Adcock, Sheriff Calvin Woodard, Jr., and Wilson County from order entered 22 October 2019 by Judge R. Allen Baddour in Wilson County Superior Court. Heard in the Court of Appeals 2 September 2021.

*Abrams and Abrams, P.A., by Douglas B. Abrams and Noah B. Abrams, and Henson & Fuerst, by Rachel A. Fuerst, for Plaintiffs-Appellees.*

*Womble Bond Dickinson (US), LLP, by Bradley O. Wood, for Defendants-Appellants Vickie Shaw, R.T. Adcock, Sheriff Calvin Woodard, Jr., and Wilson County.*

*Crumley Roberts, LLP, by Karonnie R. Truzy, for Amicus Curiae, North Carolina Advocates for Justice.*

COLLINS, Judge.

¶ 1     This appeal arises from the death of Todd Caveness while in the custody of the Wilson County Detention Center. Following Caveness' death, Connie Butterfield and

Tracie Caveness, as the co-administrators of his estate ("Plaintiffs"), sued Vickie Shaw and R.T. Adcock, in their individual capacities and in their official capacities as Wilson County Sheriff's Detention Officers; Calvin Woodard, Jr., in his individual capacity and in his official capacity as the Sheriff of Wilson County; and Wilson County (collectively "Defendants"). Plaintiffs also brought claims against Southern Health Partners ("SHP"), the contractor providing medical care at the Detention Center; Haylee Gray, a nurse employed by SHP; and the Hartford Fire Insurance Company, the surety on Sheriff Woodard's statutory bond purchased pursuant to N.C. Gen. Stat. § 162-8.[1]

¶ 2      Defendants appeal from an order denying their motions for summary judgment on Plaintiffs' official capacity claims against Shaw, Adcock, and Sheriff Woodard, and Plaintiffs' claims against Wilson County.[2] Shaw, Adcock, and Sheriff Woodard each argue that governmental immunity bars Plaintiffs' official capacity claims against them to the extent that Plaintiffs seek to recover in excess of the amount of Sheriff Woodard's official bond. The County also argues that governmental immunity bars Plaintiffs' claims against it and that it cannot be held liable for the actions of its co-defendants. Together, Defendants argue that Plaintiffs may not assert a direct

---

[1] The claims against SHP and Gray are not before this Court.
[2] The claims again Shaw, Adcock, and Woodard, in their individual capacities, were not subjects of Defendants' motion for summary judgment and remain in the trial court.

claim under the North Carolina Constitution, because Plaintiffs have an adequate remedy at law that is not barred by governmental immunity. We dismiss Defendants' argument regarding Plaintiffs' direct constitutional claim and the County's argument concerning its liability for the acts of its co-defendants because Defendants have not shown a basis for immediate appellate review of these issues. Because Defendants are entitled to the defense of governmental immunity, we reverse the order denying Defendants' motions for summary judgment on the remaining issues.

## I. Factual Background and Procedural History

Todd Caveness was arrested and confined in the Wilson County Detention Center ("Detention Center") on 10 January 2016. Caveness entered the Detention Center with documented schizophrenia and anxiety diagnoses. While confined in the Detention Center, Caveness refused food and water, expressing his belief that it had been tampered with. By 2 February 2016, Caveness was weak and had lost approximately 30 pounds since entering the Detention Center. The next day, 3 February 2016, Caveness was taken from the Detention Center to the hospital, where he died on the morning of 5 February 2016. An autopsy found that he died of a bilateral pulmonary thromboembolism resulting from dehydration and malnutrition.

Plaintiffs instituted this suit on 7 November 2017. Plaintiffs asserted six claims for relief: (1) "negligent and wanton conduct" by Haylee Gray; (2) "vicarious

liability and negligent and wanton conduct" by SHP; (3) "negligent and wanton conduct" by Adcock and Shaw; (4) "relief against Sheriff Calvin Woodard, Jr. in his individual and in his official capacity and action on bond against Hartford Fire and Insurance Company"; (5) "violation of [Caveness'] constitutional rights"; and (6) "liability of Wilson County." Plaintiffs' claim for relief against Sheriff Woodard was premised on three causes of action: wrongful death under N.C. Gen. Stat. § 28A-18-12, an action against the sheriff's bond under N.C. Gen. Stat. § 58-76-5, and treble damages for injury to a prisoner by a jailer under N.C. Gen. Stat. § 162-55. Plaintiffs also pled that Defendants had waived any applicable immunity.

¶ 5    Defendants answered and raised multiple defenses, including that governmental immunity barred Plaintiffs' claims. Defendants moved for summary judgment. Adcock, Shaw, and Sheriff Woodard each argued that governmental immunity barred the claims brought against them in their official capacities to the extent that Plaintiffs sought to recover in excess of the amount of Sheriff Woodard's official bond. Wilson County argued that governmental immunity barred Plaintiffs' claim against it, and that it could not be held liable for the acts of the other defendants as a matter of law. Defendants collectively argued that the availability of adequate remedies at law foreclosed Plaintiffs' direct claim under the North Carolina Constitution. Following briefing and argument of counsel, the trial court denied the motions for summary judgment. Defendants timely gave written notice of appeal.

## II.  Appellate Jurisdiction

The trial court's order denying Defendants' motions for summary judgment is interlocutory "because it is not a judgment that 'disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court.'" *Snyder v. Learning Servs. Corp.*, 187 N.C. App. 480, 482, 653 S.E.2d 548, 550 (2007) (quoting *Veazey v. City of Durham,* 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950)). Parties are generally not entitled to an immediate appeal of an interlocutory order. *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990).

Immediate appeal of an interlocutory order is permitted, however, where the order affects a substantial right.  N.C. Gen. Stat. § 1-277(a) (2019).  "To confer appellate jurisdiction based on a substantial right, 'the appellant must include in its opening brief, in the statement of the grounds for appellate review, sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right.'" *Doe v. City of Charlotte*, 273 N.C. App. 10, 21, 848 S.E.2d 1, 9 (2020) (quoting *Denney v. Wardson Constr., Inc.*, 264 N.C. App. 15, 17, 824 S.E.2d 436, 438 (2019)); *see also* N.C. R. App. P. 28(b)(4).  The appellant has the burden of showing that the order appealed from affects a substantial right. *Coates v. Durham Cnty.*, 266 N.C. App. 271, 273, 831 S.E.2d 392, 394 (2019).

Defendants assert as the sole ground for appellate review that "the denial of a motion for summary judgment grounded on the defense of governmental immunity

affects a substantial right and therefore is immediately appealable." "[I]t is well-established that the denial of a motion for summary judgment grounded on governmental immunity affects a substantial right and is immediately appealable[.]" *Lucas v. Swain Cnty. Bd. of Educ.*, 154 N.C. App. 357, 360, 573 S.E.2d 538, 540 (2002) (citation omitted). We will therefore review the trial court's denial of Defendants' motions for summary judgment to the extent the denial concerns the defense of governmental immunity.

¶ 9 Defendants have failed, however, to meet their burden of showing that the denial of summary judgment as to Plaintiffs' direct constitutional claim is immediately appealable. Defendants fail to address the direct constitutional claim in their statement of grounds for appellate review. In the body of their brief, Defendants argue only that adequate remedies at law foreclose Plaintiffs' constitutional claim; they do not argue that the constitutional claim is barred by immunity. Accordingly, we lack jurisdiction to address Defendants' appeal of the trial court's denial of summary judgment as to the direct constitutional claim and we dismiss Defendant's appeal of this issue.

¶ 10 Similarly, Wilson County has failed to meet its burden of showing that the denial of summary judgment based on its argument that it could not be held liable for the acts of the other defendants as a matter of law is immediately appealable. Wilson County fails to address this argument as a basis for immediate review in its

statement of grounds for appellate review. In the body of its brief, Wilson County advances no argument for immediate review on this basis. Accordingly, we lack jurisdiction to address Wilson County's appeal of the trial court's denial of summary judgment based on this theory and we dismiss Wilson's County's appeal of this issue.

## III. Standard of Review

¶ 11 We review a trial court's order denying summary judgment de novo. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs.*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019). The party moving for summary judgment has the burden of showing that summary judgment is proper. *Leake v. Sunbelt Ltd. of Raleigh*, 93 N.C. App. 199, 201, 377 S.E.2d 285, 287 (1989). The movant may do so "by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citations omitted).

## IV. Discussion

### A. Governmental Immunity

Shaw, Adcock, Sheriff Woodard, and Wilson County each argue that governmental immunity bars Plaintiffs' claims.[3]

Governmental immunity is not only an affirmative defense, "it is a complete immunity from being sued in court." *Ballard v. Shelley*, 257 N.C. App. 561, 564, 811 S.E.2d 603, 605 (2018) (quotation marks and citation omitted). Because a suit against a public official in his official capacity operates as a suit against the governmental entity itself, an official sued in this capacity may raise the defense of governmental immunity. *Paquette v. Cnty. of Durham*, 155 N.C. App. 415, 420, 573 S.E.2d 715, 719

---

[3] We note that previous decisions of this Court have used the terms "sovereign immunity" and "governmental immunity" interchangeably. *See, e.g.*, *White v. Cochran*, 229 N.C. App. 183, 189, 748 S.E.2d 334, 339 (2013) (stating that "a sheriff is a public official entitled to sovereign immunity" but analyzing whether the sheriff waived "governmental immunity"); *Myers v. Bryant*, 188 N.C. App. 585, 587, 655 S.E.2d 882, 885 (2008) (county sheriff is a public official entitled to "sovereign immunity"). These forms of immunity are, however, distinct: Sovereign immunity applies when the State or one of its agencies is the defendant, *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997), while "[g]overnmental immunity is that portion of the State's sovereign immunity which extends to local governments," *Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017). Governmental immunity applies where the defendant is a county or a county agency. *Meyer*, 347 N.C. at 104, 489 S.E.2d at 884. The distinction is salient because "[t]hese immunities do not apply uniformly. The State's sovereign immunity applies to both its governmental and proprietary functions, while the more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." *Evans v. Hous. Auth. of City of Raleigh*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (citations omitted). Lastly, public official immunity is derivative of governmental immunity, and applies where the public official is sued in his individual capacity. *Fullwood v. Barnes*, 250 N.C. App. 31, 38, 792 S.E.2d 545, 550 (2016).

(2002); *Summey v. Barker*, 142 N.C. App. 688, 690, 544 S.E.2d 262, 265 (2001). A county may also raise the defense of governmental immunity. *Est. of Williams ex rel. Overton v. Pasquotank Cnty. Parks & Recreation Dep't*, 366 N.C. 195, 198, 732 S.E.2d 137, 140 (2012).

¶ 14 Under the doctrine of governmental immunity, both a county and a county's public officials[4] are immune from suits alleging negligence in the exercise of a governmental function, unless the plaintiff shows that the county or county's public officials waived immunity. *Id.* "A county is also generally immune from suit for intentional torts of its employees in the exercise of governmental functions." *Fuller v. Wake Cnty.*, 254 N.C. App. 32, 39, 802 S.E.2d 106, 111 (2017) (citation omitted).

¶ 15 Sheriffs, sheriff's deputies, and jailers have all been recognized as public officials who may avail themselves of the defense of governmental immunity. *Baker v. Smith*, 224 N.C. App. 423, 434, 737 S.E.2d 144, 151; *Phillips v. Gray*, 163 N.C. App. 52, 56-57, 592 S.E.2d 229, 232 (2004); *Summey*, 142 N.C. App. at 691, 544 S.E.2d at 265. Our courts have also long deemed the operation of a county jail to be a governmental function. *Pharr v. Garibaldi*, 252 N.C. 803, 810-11, 115 S.E.2d 18, 24

---

[4] A sheriff is not considered a county public official as our Constitution and statutes provide that each sheriff is an independently elected public official who acts at the county level. N.C. Const. art. VII § 2; N.C. Gen. Stat. § 162-1; *Young v. Bailey*, 368 N.C. 665, 669, 781 S.E.2d 277, 280 (2016); *Boyd v. Robeson Cnty.*, 169 N.C. App. 460, 476, 621 S.E.2d 1, 11 (2005).

(1960) ("The . . . operation of prisons and jails, whether by the state, a county, or a municipality, is a purely governmental function, being an indispensable part of the administration of the criminal law . . . .") (citations omitted); *Gentry v. Town of Hot Springs*, 227 N.C. 665, 668, 44 S.E.2d 85, 86 (1947) (recognizing governmental immunity for the chief of police and jailer against a claim of wrongful death in the town jail); *Kephart v. Pendergraph*, 131 N.C. App. 559, 563, 507 S.E.2d 915, 918 (1998) ("[T]he actions of a county and its officials in maintaining confinement facilities within the context of law enforcement services are likewise encompassed within the rubric of governmental functions."); *Hare v. Butler*, 99 N.C. App. 693, 698, 394 S.E.2d 231, 235 (1990) ("Certain activities are clearly governmental such as law enforcement operations and the operation of jails, public libraries, county fire departments, public parks and city garbage services.").

¶ 16 Relying on *Leonard v. Bell*, 254 N.C. App. 694, 803 S.E.2d 445 (2017), and *Medley v. N.C. Dep't of Corr.*, 330 N.C. 837, 412 S.E.2d 654 (1992), Plaintiffs argue that the provision of medical services to inmates is not a governmental function. Plaintiffs' reliance is misplaced.

¶ 17 In *Leonard*, the plaintiff sued two physicians employed by the Department of Public Safety in their individual capacities, alleging medical malpractice. 254 N.C. App. at 695, 803 S.E.2d at 447. On appeal, the physicians contended that they were entitled to public official immunity. *Id.* at 696, 803 S.E.2d at 447. The sole question

on appeal was whether the physicians qualified as public officials, as opposed to mere public employees, and thus were entitled to immunity from suit in their individual capacities. *Id.* at 698, 803 S.E.2d at 449.

¶ 18 This Court held that the physicians did not qualify as public officials and accordingly were not entitled to immunity from suit in their individual capacities. *Id.* at 705, 803 S.E.2d at 453. While the Court "note[d] that there is nothing uniquely sovereign about the health services provided by defendants," *id.*, this observation pertained only to the treatment provided by the individual physicians themselves— not whether the broader operation of the facility and the provision of medical services within it was a governmental function. Moreover, the basis of Plaintiffs' complaint in this case is Defendants' failure to provide Caveness with adequate medical care while operating the jail and supervising its detainees.

¶ 19 *Medley* is likewise distinguishable. In *Medley*, an inmate brought a medical malpractice claim under the North Carolina Tort Claims Act against the state Department of Correction. 330 N.C. at 838, 412 S.E.2d at 655. The Department of Correction moved to dismiss on the ground that the physician who treated the plaintiff was an independent contractor. *Id.* Our Supreme Court held that the state has a nondelegable duty to provide adequate medical care to inmates. *Id.* at 844, 412 S.E.2d at 659. As such, an independent contractor physician was considered an

"agent" for purposes of claims against the state under the North Carolina Tort Claims Act. *Id.* at 845, 412 S.E.2d at 659.

Neither *Leonard* nor *Medley* support the conclusion that Defendants—in their respective roles as an elected sheriff, detention officers, and a county government— were engaged in a proprietary function not subject to governmental immunity. Governmental immunity applies, and Defendants are immune from the claims at issue unless Plaintiffs have shown waiver.

### 1. *Waiver of Immunity by Liability Insurance*

Plaintiffs assert that Defendants waived governmental immunity by purchasing liability insurance. Defendants respond that the provisions of their applicable insurance policy left their governmental immunity intact.

The purchase of liability insurance pursuant to N.C. Gen. Stat. § 153A-435 may waive governmental immunity for both a county and a sheriff. *Patrick v. Wake Cnty. Dep't of Human Servs.*, 188 N.C. App. 592, 595, 655 S.E.2d 920, 923 (2008); *Myers*, 188 N.C. App. at 588, 655 S.E.2d at 885; N.C. Gen. Stat. § 153A-435 (2019). Section 153A-435 provides:

> A county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property or against absolute liability for damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their

employment.

N.C. Gen. Stat. § 153A-435(a). "Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." *Id.* Governmental immunity is therefore not waived where the applicable liability insurance policy excludes a plaintiff's claim from coverage. *Patrick*, 188 N.C. App. at 596, 655 S.E.2d at 923.

¶ 23 In *Patrick*, this Court held that governmental immunity was not waived by the defendant county agency's purchase of insurance because the policy contained the following exclusion:

> This policy is not intended by the insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 153A-435. Accordingly, subject to this policy and the Limits of Liability shown on the Declarations, this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defenses is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

*Id.*

¶ 24 On multiple occasions since, our Court has held that purchase of similar insurance policies did not waive a defendant's governmental immunity. In *Owen v. Haywood Cnty.*, 205 N.C. App. 456, 697 S.E.2d 357 (2010), we held that immunity

had not been waived where the policy excluded from coverage "any claim, demand, or cause of action against any Covered Person as to which the Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law." *Id.* at 460, 697 S.E.2d at 359. Similarly, in *Earley v. Haywood Cnty. Dep't of Soc. Servs.*, 204 N.C. App. 338, 694 S.E.2d 405 (2010), we held that immunity was not waived where the policy contained an exclusion substantively identical to that in *Owen* and the policy further specified that the parties

> intend for no coverage to exist . . . as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under North Carolina law. It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

*Id.* at 342, 694 S.E.2d at 409. We reached the same conclusion in *Bullard v. Wake Cnty.*, 221 N.C. App. 522, 729 S.E.2d 686 (2012), where the insurance policy similarly provided that it was

> not intended by the insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 153A-435. Accordingly, subject to this policy and the Limits of Liability shown on the Declarations, this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defense is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

*Id.* at 527, 729 S.E.2d at 690.

In this case, it is undisputed that a policy provided by the North Carolina Association of County Commissioners ("NCACC Policy") covered Defendants during the relevant time period. Sections II, V, and VI of the NCACC Policy are pertinent.

Section II, entitled "General Liability Coverage," extends certain coverage to the County, its employees, and its volunteers. Section II contains a provision entitled "Immunity" which states:

> This Section II of the Contract does not cover claims against a Covered Person against which the Covered Person may assert sovereign and/or governmental immunity in accordance with North Carolina Law. It is the express intention of the parties to this Contract that the coverage provided in this Section of the Contract does not waive the entitlement of a Covered Person to assert sovereign immunity and/or governmental immunity.

Section II also contains an exclusion stating that it "does not apply to any claim or Suit . . . [a]s to which a Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law."

Section V, entitled "Public Officials Liability Coverage," extends certain coverage to the County, certain officers of the County, and certain employees of the County. Section V contains a similar provision entitled "Immunity" which states:

> The parties to this Contract intend for no coverage to exist under Section V (Public Officials Liability Coverage) as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under

North Carolina law. It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

Section V also contains a similar exclusion stating that it "does not apply to . . . Claims or Suits to which a Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law."

¶ 28 Finally, Section VI, entitled "Law Enforcement Liability Coverage," extends coverage to the County, and is the sole portion of the policy extending coverage to the Sheriff, sheriff's deputies, and other law enforcement personnel. Section VI likewise contains a provision entitled "Immunity" which states:

The parties to this Contract intend for no coverage to exist under this Section VI of the Contract as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under North Carolina law. It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

Additionally, Section VI contains an exclusion stating that it "does not apply to . . . Claims or Suits to which a Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina Law."

¶ 29 The NCACC Policy's immunity provisions and policy exclusions are substantively equivalent—and in many respects identical—to those we held did not

waive immunity in *Patrick*, *Earley*, *Bullard*, and *Owen*. The NCACC policy specifically states that the parties to the insurance contract did not intend for the purchase of the coverage to waive immunity for any of the covered parties, did not intend to cover any claims to which an immunity defense applied, and that such claims were excluded from coverage. Accordingly, the NCACC Policy did not waive Defendants' governmental immunity.

¶ 30      Plaintiffs argue that "the absurd result created by these cases, which in effect spends taxpayer funds for policies that will never pay out on behalf of the named insured, is improper." But "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

### 2. *Waiver of Immunity by Sheriff's Bond*

¶ 31      Though we conclude that Defendants did not waive immunity by purchasing liability insurance, we must also consider whether Sheriff Woodard waived immunity by purchasing a sheriff's bond. Pursuant to statute, each sheriff "shall furnish a bond payable to the State of North Carolina for the due execution and return of process, the payment of fees and moneys collected, and the faithful execution of his office as sheriff . . . ." N.C. Gen. Stat. § 162-8 (2019). Purchasing a sheriff's bond as required by N.C. Gen. Stat. § 162-8 waives the sheriff's governmental immunity, but only "to

the extent of the coverage provided." *White v. Cochran*, 229 N.C. App. 183, 190, 748 S.E.2d 334, 339 (2013); *see also Smith v. Phillips*, 117 N.C. App. 378, 384, 451 S.E.2d 309, 314 (1994) ("[W]aiver of a sheriff's official immunity may be shown by the existence of his official bond[.]"); *Summey*, 142 N.C. App. at 690, 544 S.E.2d at 265 (holding sheriff's immunity waived only to the extent of the amount of the bond). To recover on the sheriff's bond, "[e]very person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State . . . ." N.C. Gen. Stat. § 58-76-5 (2019).

¶ 32       Sheriff Woodard concedes that he has purchased a $20,000 bond pursuant to section 162-8. He has therefore waived his governmental immunity for claims up to $20,000 against the bond, "the extent of the coverage provided." *Cochran*, 229 N.C. App. at 190, 748 S.E.2d at 339.

### 3. *Constitutional Challenge*

¶ 33       Plaintiffs appear to argue that governmental immunity violates the North Carolina Constitution. Plaintiffs argue that the amount of damages must be assessed by a jury, and the Constitution "does not permit [] an override of the rights and remedies held by the people when an award of governmental immunity at the summary judgment stage results in a duty left intact without remedy for its breach."

Our Supreme Court has consistently recognized the continued vitality of the doctrine of governmental immunity. *See, e.g.*, *Est. of Williams*, 366 N.C. at 198, 732 S.E.2d at 140 ("Our jurisprudence has recognized the rule of governmental immunity for over a century."). On multiple occasions, the Court has declined to limit or abrogate the doctrine when asked to do so. *See, e.g.*, *Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 324, 420 S.E.2d 432, 435 (1992) ("The plaintiff asks us either to abolish governmental immunity or to change the way it is applied. . . . We feel that any change in this doctrine should come from the General Assembly."); *Koontz v. City of Winston-Salem*, 280 N.C. 513, 529, 186 S.E.2d 897, 908 (1972) ("We again decline to abrogate the firmly embedded rule of governmental immunity."); *Steelman v. City of New Bern*, 279 N.C. 589, 594, 184 S.E.2d 239, 242 (1971) (declining to follow a "modern trend" of abrogating governmental immunity because "this judge-made doctrine is firmly established in our law today, and by legislation has been recognized by the General Assembly as the public policy of the State."). We are bound by these decisions upholding the doctrine of governmental immunity. *State v. Gillis*, 158 N.C. App. 48, 53, 580 S.E.2d 32, 36 (2003) ("This Court is bound by precedent of the North Carolina Supreme Court.").

## V. Conclusion

We dismiss Defendants' argument regarding Plaintiffs' direct constitutional claim and the County's argument concerning its liability for the acts of its co-

defendants because Defendants have not shown a basis for immediate appellate review of these issues. Governmental immunity bars Plaintiffs' suit against the County and Plaintiffs' official capacity claims against Shaw and Adcock. Additionally, governmental immunity bars Plaintiffs' claims in excess of Sheriff Woodard's statutory bond. The trial court therefore erred in denying Defendants' motions for summary judgment on those causes of action.

DISMISSED IN PART; REVERSED IN PART.

Judges DIETZ and ZACHARY concur.