The relator caused this action to be brought for recovery against the sheriff and the American Indemnity Company, surety on his bond, for damages resulting from excessive force used in an attempt to arrest the plaintiff by the said sheriff under color of his office.
The complaint, amongst other more formal matters, sets up that the sheriff, while acting under color of his office, "viciously assaulted, severely wounded and permanently and seriously injured, and arrested the relator herein and imprisoned him in the common jail of said county and there confined him forcibly and against his will, from seven o'clock p.m. until twelve o'clock midnight, or thereabouts, restraining him of his liberty and subjecting him to hardships, privation, humiliation and disgrace." "That said assault was made upon the relator by the said Honeycutt, as aforesaid, with a deadly weapon, to wit, a blackjack, with which the relator was stricken three or four vicious and powerful blows upon his head, one of which was just above his right eye, causing the permanent loss of sight in said right eye, and greatly injuring and damaging him for life; and that said assault upon, and arrest and imprisonment of, the relator as aforesaid was without legal process or color thereof and not in due course of law." It is further alleged that the conduct of Honeycutt was in wanton and reckless disregard of the rights of the relator and wholly without cause or justification in law.
As the allegations of fact in the complaint are admitted by the demurrer, we may assume that the sheriff had given his official bond with his codefendant as surety, and that the said bond was conditioned as required by law, approved, accepted, and filed.
The bond referred to is that required by C. S., 3930, commonly known as the process bond. "The third bond, for the due execution and return of process, payment of fees and moneys collected, and the faithful execution of his office as sheriff, shall be not more than five thousand dollars, in the discretion of the board of county commissioners, and shall be conditioned as follows:" (here follows a statement of specific requirements) "and in all other things well and truly and faithfully execute the said office of sheriff during his continuance therein . . ." *Page 272 
The defendants demurred to the complaint, the defendant Honeycutt upon the ground that he was sued with respect to his official conduct and no cause of action was stated against him in his official character, the defendant American Surety Company upon the ground that the official bond given by it as surety did not cover the facts alleged or the misconduct of the sheriff, if any, and no liability on its part arose upon said bond. The demurrer was sustained and plaintiff appealed.
The court is called upon to answer the single question: Did the facts alleged in the complaint, assuming them to be true, raise a liability upon the sheriff's bond? There are other questions that may help to its answer.
When are the duties of that office well and truly and faithfully performed? Does the public policy to which we have referred go no further than to satisfy some aggrieved person interested in the service of process or defrauded of his moneys? Does it paramount the rights of society merely and not reciprocally the rights of its members? To what extent may the language required by the law to be put into the sheriff's bond be interpreted as reflecting a broader public policy — a more equitable exercise of public power? In the exercise of this power, does the sheriff owe no official duty under his bond except to those who have instigated his action — none to those who are on the receiving end and who are dealt with under color of his office?
The factual situation in a number of cases cited by defendant, where official bonds have not been considered under the given circumstances sufficient to cover wrongful acts of the sheriff, may be distinguished from that in the case at bar.
While it is true that the opinion in Davis v. Moore, 215 N.C. 449, brings forward many of the old cases, pertinent of course to the subject, it will be found that these cases did not cover the exact question presented here, and the inferences of law should not now be taken out of their setting. In Davis v. Moore, supra, which is concerned with the negligent act of a deputy in closing the door upon a prisoner in jail and injuring his hand, the court properly declined to hold the incident to be covered by the sheriff's bond.
Crumpler v. Governor, 12 N.C. 52, was concerned with a proceeding on the sheriff's bond for the collection of certain taxes. The gist of that opinion was that the particular taxes sued for could not be recovered under the bond on which summary judgment was entered, without resort to the general condition, which was not required by law to be inserted, that the sheriff shall "in all things well and truly and faithfully execute the said office," which was held to refer only to the duties listed. Since the specific provisions of the various bonds at that time required to be given provided for the security of different taxes, the court held the bond not liable under this general provision. *Page 273 
 Governor v. Matlock, 12 N.C. 214, deals with a similar situation, holding that the county tax for which a bond had been required by law could not be recovered under this general clause in the sheriff's general official bond required by the Act of 1777.
In Jones v. Montfort, 20 N.C. 69, the opinion written by Gaston, J., it is held that the concluding general clause in the sheriff's bond, relating to his duties, could not be held to "extend to the fiscal duties of the office."
Boger v. Bradshaw, 32 N.C. 229, also held that the clause in the sheriff's official bond relating to his general duties did not extend to the public and county taxes.
In Sutton v. Williams, 199 N.C. 546, the sheriff had been sued upon his bond for the negligent acts of a prisoner which he had suffered to escape. The opinion does consider the cases above mentioned and construed them as covering the facts in that case; but approval of those cases was not necessary to a decision in the case then under consideration, since the injury complained of could not in any event be considered as a natural and probable consequence of the dereliction of duty attributed to the sheriff, and the opinion adds nothing to the strength of the position by the defendant.
In Midgett v. Nelson, 214 N.C. 396, the bond sued upon simply stipulated that the surety company "does hereby agree to indemnify the State of North Carolina . . . against the loss of money or other personal property through the failure of any of the persons . . . named in the schedule forming a part of this bond . . . faithfully to discharge theduties of their respective offices or employments as described in suchschedule, and honestly to account for all money or other personal property that may come into their respective hands by virtue of said offices or employments," etc. It is noted in the opinion that the bond was not "conditioned," as required by C. S., 1870, "for the faithful performance" of the duties of Assistant Fisheries Commissioner. The suit was by a person claiming liability for his false arrest. The bond was construed as a bond of indemnity to the State, and not available to the plaintiff. It has no bearing upon the case at bar.
We are not inadvertent to the construction put upon similar clauses in the sheriff's general bond in the earlier cases cited, to the effect that the general statement "and shall in all other things well and truly and faithfully" perform the duties of his office, must be restrained to the duties specially listed.
In Jones v. Montfort, 20 N.C. 69, Gaston, J., the Court rather generously varies the statement of this holding in referring to Governor v.Matlock, supra. "The decision then made was in conformity to the principle before established in the cases of Crumpler v. The Governor, *Page 274 
1 Dev., 52, and The Governor v. Barr, 1 Dev., 65, that the general words in the conclusion of the condition shall be restricted by the preceding particular words, to duties of a like kind with those specified." In fact,Crumpler v. Governor, supra, and Governor v. Matlock, supra, and cases following closely this principle, regard the general statement as referringonly to the previously listed duties, and as adding nothing whatever to the obligation of the bond. It is singular that in most of these decisions the significant word "other" is not mentioned at all, nor is any weight given to its obvious effect in recognizing that the sheriff has duties "other" than those specifically listed.
It is easy to see why such a general statement would not be expected to cover fiscal duties of the sheriff, as to some of which, as noted in theMatlock case, supra, and the Crumpler case, supra, he was required to give other security, but we fail to understand why the clause can be regarded as a mere cadence to a period or, to use a homely illustration, a varnish to the job.
Further discussion along this line, however, may not be important, since we are satisfied that the Legislature has extended the liability on the sheriff's general official bond beyond this narrow restriction, by a statute which parallels the general clause we are considering. C. S., 354, on official bonds, provides: "Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State, without any assignment thereof . . . and every such officer and the sureties on his official bonds shall be liable to the person injured for all acts done by said officer by virtue or under color of his office." The defendant surety presumably made its contract with a knowledge of this public law, and it entered into the contract. Hood, Comr. of Banks, v. Simpson, 206 N.C. 748, 175 S.E. 193;Bateman v. Sterrett, 201 N.C. 59, 159 S.E. 201; Steele v. InsuranceCo., 196 N.C. 408, 145 S.E. 787, 61 A.L.R., 821.
In Warren v. Boyd, 120 N.C. 56, 26 S.E. 700, this statute was held to create or declare a liability on the sheriff's official bond for a false arrest.
In Kivett v. Young, 106 N.C. 567, 569, construing a similar condition in the bond of the register of deeds, the Court said the security of the bond was not confined to the specially listed duties, but that this statute enlarges the scope and purpose of official bonds in accord with sound policy to cover other duties. The contention here advanced by the defendant was made there, and the Court said: "The learned counsel for the appellant contends in his cogent brief that the condition of the *Page 275 
bond of the defendants sued upon is such as that so prescribed, and that this Court has repeatedly decided that the duty of the register embraced by it is confined to `the safekeeping of the books and records' of his office, and that the general words, `and for the faithful discharge of the duties of his office,' have reference to, and only to, such duty, and not to other general duties. This Court did, in the past, so interpret the statute andlike conditions in other classes of official bonds. . . . It is singular that the clause last recited, notwithstanding a known evil to be remedied, was not enacted until 1883. It first appeared as part of The Code. So that now official bonds and the conditions of them embrace and extend to all acts done by virtue or under color of office of the officer giving the bond." The Court observes pertinently: "There were no adequate reasons why the conditions of official bonds should not extend to and embrace all the official duties of the office, and there were serious ones of justice and policy why they should." See 57 C. J., 1014, footnote 61 (a).
Upon review of these authorities we do not think that the doctrine staredecisis, if it applies at all, is involved to such an extent as to prevent the Court in applying to the case sound and equitable principles of law. We feel that if a departure has been made from these principles it grew out of the unnecessary application of a doubtful rule of interpretation in the earlier cases, an impropriety evidently perceived by Gaston, J., in writingJones v. Montfort, supra, since even thus early stare decisis is suggested as a reason for following the precedent. No doubt C. S., 354, was enacted to put into effect a broader public policy.
The general rule in other jurisdictions is that the sureties on the official bond of a sheriff are liable for a wrongful arrest and imprisonment under color of his office (57 C. J., 1042), for an assault and battery, while in the prosecution of an arrest, or for excessive force used therein. Cambridge v. Foster, 195 Mass. 411, 81 N.E. 278; Branch v.Guinn (Texas Civ. A.), 242 S.W. 482; Deason v. Gray, 192 Ala. 611,69 S.E. 15; Copeland v. Dunehoo, 36 Ga. A., 817, 138 S.E. 267; Greenberg v.People, 225 Ill. 174, 80 N.E. 100; Cash v. Peo., 32 Ill. A., 250; Statev. Walford, 11 Ind. Appeals, 392, 39 N.E. 162. In some of these cases different phraseology is employed in the bonds, but the principles drawn from the cases are applicable.
The theory that when the sheriff acts viciously, immoderately and with excessive force in making an arrest he becomes ipso facto accountable to an injured person in his private capacity only, is not a reasonable one, and imports an official immunity that is not ordinarily extended to a ministerial officer. It would be a poor law that would permit the sheriff,in medias ces, to throw away his badge and ply his billy with deadly effect. *Page 276 
The law is never more definitely on trial than it is when it comes in contact with the public in its execution. To preserve the respect the people have for it as an instrument of justice, and to appease the spirit of just resentment against oppression, which often flares into rebellion, the execution of law, while not a matter of debate between the sheriff and an offender, should not be attended with unnecessary harshness. It is true that officers of the law must be protected in their attempts to execute it, and great consideration is given them by the courts in matters of arrest. Questions of excessive force must be delicately handled and the conduct of officers cannot, at times, be weighed in golden scales. Evidently the line must be drawn somewhere; but it cannot, with justice, be staked out by a sudden shift in the legal relation of the parties, a discontinuance of official character at the moment the arresting officer begins to violate his duty and inflict injury under color of his office. The injured party was not on equal terms from the beginning. He was approached under color of an authority which he was bound to respect, and by an officer equipped with physical means sufficient to accomplish his purposes, under the assumption that they are, and will remain, lawful. He must rely on the restraint which the law throws around the arresting officer at the same time it clothes him with power, and upon the guaranty provided by law that official duty shall not be disregarded or the delegated power abused.
If not the wording of the bond, then most certainly the force of the statute, brings him within this protection. The sheriff will not be permitted to act under color of his office down to the point where he is remiss in his duties, then shed his official character and escape into the first person singular, to the relief of his surety.
The judgment sustaining the demurrer is
Reversed.