WHITE v. COCHRAN

[229 N.C. App. 183 (2013)]

———

REBECCA S. WHITE, Plaintiff

v.

CURTIS COCHRAN and WESTERN SURETY COMPANY, Defendants

No. COA13-155

Filed 20 August 2013

1. **Appeal and Error—interlocutory orders and appeals—denial of summary judgment—sovereign immunity**

    The denial of summary judgment was immediately appealable where the motion was made on the grounds of sovereign immunity.

2. **Appeal and Error—standard of review—summary judgment**

    A trial court's decision to grant or deny a summary judgment motion is subject to *de novo* review on appeal.

3. **Appeal and Error—preservation of issues—issue not raised at trial**

    An issue regarding the amount of a sheriff's liability under a surety bond was not addressed on appeal where it was not raised at trial.

**4. Immunity—governmental—sheriff's surety bond—claim with scope of bond**

Defendants were not entitled to summary judgment based on governmental immunity in an action by a detention officer for wrongful discharge after a workers' compensation claim. Defendants raised governmental immunity through the sheriff's purchase of a surety bond, which waived liability only to the extent of coverage. Plaintiff's claim came within the scope of the sheriff's official duties, if supported by adequate proof, and is covered by the sheriff's bond.

**5. Immunity—governmental—purchase of insurance**

Defendants were not entitled to summary judgment based on governmental immunity in an action by a detention officer for wrongful discharge after a workers' compensation claim. Defendants raised governmental immunity through the county's purchase of insurance, which waived liability only to the extent of coverage. Although plaintiff argued that plaintiff's claim fell between policies, the sheriff received notice of the claim in a form consistent with the policy before the policy period expired, and considerably before the end of the extended reporting period. Defendants also pointed to a clause in the policy excluding Equal Employment Opportunity Commission (EEOC) hearings, but offered no support for the contention that plaintiff's retaliatory discharge claim was either an EEOC claim or a similar state proceeding.

Appeal by defendants from order entered 26 November 2012 by Judge James U. Downs in Swain County Superior Court. Heard in the Court of Appeals 22 May 2013.

*The Moore Law Office, PLLC, by George W. Moore, for Plaintiff.*

*Melrose, Seago & Lay, PA, by Mark R. Melrose, Joshua Nielsen, and Kimberly C. Lay, for Defendant.*

ERVIN, Judge.

Defendants Curtis Cochran, Sheriff of Swain County, and Western Surety Company appeal from an order denying Defendants' summary judgment motion. On appeal, Defendants argue that the trial court erred by failing to conclude that there was no genuine issue of material fact and that Defendants were entitled to judgment in their favor as a matter of law on governmental immunity grounds. After careful consideration of Defendants' challenges to the trial court's judgment in light of the

record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

Plaintiff Rebecca White was hired to work as a detention officer with the Swain County Sheriff's Department on 5 November 2008. On 24 January 2009, Plaintiff slipped, fell, and sustained a work-related injury. As a result of her injury, Plaintiff did not work from 24 January through 25 February 2009. Subsequently, Plaintiff filed a claim for workers' compensation benefits with the North Carolina Industrial Commission, ultimately receiving an award of medical expenses and temporary total disability benefits. During her period of disability, Plaintiff received a letter dated 4 February 2009 informing her that she would be eligible for insurance coverage under COBRA. Although Plaintiff asked her employer why she had received this letter, her question was never answered.

Following her period of disability, Plaintiff worked on 25 February 2009, 26 February 2009, 2 March 2009, and 6 March 2009. On 6 March 2009, Plaintiff was informed that she should not return to work. Subsequently, Plaintiff's employment was terminated.

On 5 June 2009, Plaintiff filed a complaint with the North Carolina Department of Labor in which she alleged that she had been wrongfully terminated from her employment for seeking workers' compensation benefits in violation of N.C. Gen. Stat. § 95-240, *et seq.* On the same date, the Department of Labor sent a letter to "County of Swain – Sheriff's Department," providing notice of Plaintiff's complaint. On 8 June and 10 June 2009, the Department of Labor sent information requests and other communications to the Swain County Sheriff's Department. On 19 June 2009, the Sheriff's Department responded to Plaintiff's complaint by providing, among other things, a position statement. On 26 June 2009, the Sheriff's Department provided a supplemental response to Plaintiff's complaint and requested that her complaint be dismissed. On 26 August 2009, the Department of Labor denied Plaintiff's claim and issued Plaintiff a right to sue letter, which was copied to Swain County and the Swain County Sheriff's Department, pursuant to N.C. Gen. Stat. § 95-242 authorizing her to initiate civil litigation within 90 days of the date upon which the right to sue letter was issued.

At all relevant times, public officials and law enforcement officers employed by Swain County were covered by a number of liability insurance policies or similar instruments. From 1 July 2008 through 1 July 2009,

coverage was provided pursuant to a policy issued by Argonaut Group Insurance. From 1 July 2009 through 1 July 2010, coverage was provided under the North Carolina Association of County Commissioners Risk Management Pools. Finally, as required by N.C. Gen. Stat. § 162-8, Sheriff Cochran was covered by a bond issued by Western Surety Company from 4 December 2006 through 4 December 2010. After the initiation of the present litigation, Argonaut, NCACC, and Western Surety each denied that coverage was available under the applicable policies or bonds.

## B. Procedural History

On 20 October 2009, Plaintiff filed a complaint against Sheriff Cochran asserting a claim for retaliatory termination stemming from her decision to file a workers' compensation claim in violation of N.C. Gen. Stat. § 95-241 and wrongful discharge, and seeking damages, including treble damages and punitive damages, as a result of the injury which she claimed to have sustained as a result of Sheriff Cochran's conduct. On 16 December 2009, Sheriff Cochran filed an answer denying the material allegations of Plaintiff's complaint and asserting that he would have terminated her employment even if she had not filed a workers' compensation claim. On 6 January 2010, Sheriff Cochran amended his answer to include a request for an award of costs and attorney's fees.

On 28 April 2010, Sheriff Cochran filed a motion for judgment on the pleadings and a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. On 19 May 2010, Sheriff Cochran filed a second motion for judgment on the pleadings and motion to dismiss for lack of subject matter jurisdiction based upon Plaintiff's failure to join Sheriff Cochran's surety as required by N.C. Gen. Stat. § 58-76-5. On 28 June 2010, Judge Bradley B. Letts entered an order granting Sheriff Cochran's first motion for judgment on the pleadings and for dismissal of Plaintiff's complaint for lack of subject matter jurisdiction. The essential basis for Judge Letts' decision to dismiss Plaintiff's complaint was that, although the defendant named in Plaintiff's complaint was Sheriff Cochran, the right to sue letter issued to Plaintiff authorized her to bring suit against Swain County and the Swain County Sheriff's Department. Plaintiff noted an appeal to this Court from Judge Letts' order.

On 4 October 2011, this Court filed an opinion reversing Judge Letts' order. *White v. Cochran*, ___ N.C. App. ___, 716 S.E.2d 420 (2011). In the course of making that decision, we held that Plaintiff had asserted both a common law wrongful discharge claim and a statutory retaliatory discharge claim against Sheriff Cochran, that Plaintiff's retaliatory discharge claim had been asserted against Sheriff Cochran in his official

capacity, and that a suit against Sheriff Cochran in his official capacity was tantamount to a suit against the Swain County Sheriff's Department, so that Plaintiff's claim was, contrary to the trial court's decision, brought against a party named in the right to sue letter. *White*, __ N.C. App. at __, 716 S.E.2d at 423-26. In addition, we held that Plaintiff's common law wrongful discharge claim had been asserted against Sheriff Cochran in his official capacity, that any common law wrongful discharge complaint that Plaintiff might wish to assert against Sheriff Cochran in his official capacity was subject to Sheriff Cochran's right to assert a governmental immunity defense, and that, since the parties had not discussed, either before the trial court or in their briefs before this Court, the issue of whether Plaintiff's claim was barred by governmental immunity or by Plaintiff's failure to join Sheriff Cochran's surety was not properly before the Court at that time. *Id.* at __, 716 S.E.2d at 426.

On 8 December 2011, Plaintiff filed a motion seeking leave of court to amend her complaint to "add Western Surety Company as a defendant" and to allege that Sheriff Cochran had waived governmental immunity by purchasing an official bond and by the fact that Swain County had purchased liability insurance which covered Sheriff Cochran. On 10 February 2012, Judge Marvin P. Pope, Jr., entered an order allowing Plaintiff's amendment motion and denying Sheriff Cochran's second motion for judgment on the pleadings and to dismiss for lack of subject matter jurisdiction. On 26 March and 26 April 2012, Defendants, respectively, filed separate answers to Plaintiff's amended complaint in which they denied the material allegations of Plaintiff's complaint and asserted that Sheriff Cochran would have terminated Plaintiff even if she had not filed a workers' compensation claim, public official immunity, and governmental immunity as affirmative defenses.

On 20 August 2012, Defendants filed a motion seeking the entry of summary judgment in their favor on the grounds that "Defendants are immune from liability because the actions brought against them are excluded from coverage under the Swain County's insurance policies." On 7 November 2012, Defendants filed an amended summary judgment motion which rested on the same contention. On 9 November 2012, Plaintiff filed a motion to strike portions of the affidavits that Defendants had filed in support of their summary judgment motion. On 14 November 2012, Defendants filed a second amended summary judgment motion. On 26 November 2012, the trial court entered an order denying Defendants' summary judgment motion on the grounds that "there are genuine issues of material fact to be determined in this action." Defendants noted an appeal to this Court from the trial court's order.

## II.  Substantive Legal Analysis

### A.  Appealability

**[1]** As a general proposition, no appeal lies from an order denying a summary judgment motion on the grounds that such an order is interlocutory and is not, for that reason, immediately appealable. *Smith v. Phillips*, 117 N.C. App. 378, 380, 451 S.E.2d 309, 311 (1994) (citing *Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978)). However, "when the motion is made on the grounds of sovereign . . . immunity, such a denial is immediately appealable, because to force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity." *Id.* As a result, given that Defendants sought to have summary judgment entered in their favor on governmental immunity grounds, their appeal is properly before us pursuant to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) (allowing interlocutory appeals from orders which "affect[] a substantial right").

### B.  Standard of Review

**[2]** According to well-established North Carolina law, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (*see also Smith*, 117 N.C. App. at 380-81, 451 S.E.2d at 312). For that reason, the moving party bears the burden of establishing "the absence of any triable issue of fact." *Goynias v. Spa Health Clubs, Inc.*, 148 N.C. App. 554, 555, 558 S.E.2d 880, 881, *aff'd*, 356 N.C. 290, 569 S.E.2d 648 (2002). A trial court's decision to grant or deny a summary judgment motion is subject to *de novo* review on appeal. *Craig ex rel. Craig v. New Hanover County Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). We will now review Defendants' challenges to the trial court's order utilizing the applicable standard of review.

### C.  Waiver of Governmental Immunity

**[3]** In their brief, Defendants argue that the trial court's order should be overturned because Plaintiff failed to forecast sufficient evidence to show that Sheriff Cochran had waived sovereign immunity through the purchase of liability insurance, that the Western Surety bond does

not work a waiver of Sheriff Cochran's ability to avoid suit on the basis of governmental immunity, and, in the alternative, that Sheriff Cochran could not be held liable under the Western Surety bond in an amount in excess of the face amount of the bond. However, given that Defendants did not raise the third of these three contentions before the trial court, that issue is not properly before us and we decline to address it at this time. N.C.R. App. P. 10(a)(1) (stating that, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context"). As a result, we will focus our attention on the first two contentions advanced in Defendants' brief.

The doctrine of sovereign immunity provides "the state, its counties, and its public officials, in their official capacity[ies], [with] an unqualified and absolute immunity from law suits." *Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (citing *Messick v. Catawba County*, 110 N.C. App. 707, 717, 431 S.E.2d 489, 493, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993)), *disc. review denied*, 357 N.C. 165, 580 S.E.2d 695 (2003). "[I]t is generally established that a sheriff is a public official entitled to sovereign immunity and, unless the immunity is waived pursuant to a statute, is protected from suit against him in his official capacity." *Myers v. Bryant*, 188 N.C. App. 585, 587, 655 S.E.2d 882, 885 (quoting *Smith*, 117 N.C. App. at 381, 451 S.E.2d at 312) (internal quotation marks omitted), *disc. review denied*, 362 N.C. 360, 664 S.E.2d 309 (2008). A plaintiff seeking to overcome a governmental immunity defense must specifically allege that the official or governmental entity has waived the right to rely on such an immunity-related defense. *Phillips v. Gray*, 163 N.C. App. 52, 56, 592 S.E.2d 229, 232 (citing *Clark v. Burke County*, 117 N.C. App. 85, 88, 450 S.E.2d 747, 748 (1994)), *disc. review denied*, 358 N.C. 545, 599 S.E.2d 406 (2004). In accordance with this fundamental procedural principle, Plaintiff has alleged that Sheriff Cochran waived the right to assert a defense of governmental immunity based upon the fact that Swain County purchased insurance which provided Sheriff Cochran with liability coverage and the fact that Sheriff Cochran purchased a surety bond.

As Plaintiff's argument suggests, a sheriff may waive governmental immunity in at least two different ways. *Smith*, 117 N.C. App. at 383, 451 S.E.2d at 313. According to N.C. Gen. Stat. § 58-76-5, a sheriff waives governmental immunity by purchasing a bond as is required by N.C. Gen. Stat. § 162-8. *See also Sellers v. Rodriguez*, 149 N.C. App. 619, 624, 561 S.E.2d 336, 339 (2002) (stating that "a sheriff may also waive

governmental immunity by purchasing a bond"). However, the purchase of a bond precludes a sheriff from relying upon "the protective embrace of governmental immunity . . . only where the surety is joined as a party to the action," *Summey v. Barker*, 142 N.C. App. 688, 691, 544 S.E.2d 262, 265 (2001) (citing *Messick*, 110 N.C. App. at 715, 431 S.E.2d at 494), and only to the extent of the amount of the bond. *Hill v. Medford*, 158 N.C. App. 618, 623, 582 S.E.2d 325, 328-29 (Martin, J., dissenting) (citing N.C. Gen. Stat. § 58–76–5 and *Summey*, 142 N.C. App. at 691, 544 S.E.2d at 265), *rev'd per curiam on the basis of the dissenting opinion in the Court of Appeals*, 357 N.C. 650, 588 S.E.2d 467 (2003).

Secondly, a sheriff waives governmental immunity when a county purchases liability insurance which provides coverage to the sheriff. *Paquette*, 155 N.C. App. at 418, 573 S.E.2d at 717 (stating that "[a] county may waive its sovereign immunity by purchasing liability insurance pursuant to N.C. Gen. Stat. § 153A–435(a)"); *see also Smith*, 117 N.C. App. at 384, 451 S.E.2d at 314 (stating "that waiver of a sheriff's official immunity may be shown by the existence of his official bond as well as by his county's purchase of liability insurance"). As the language of N.C. Gen. Stat. § 153A-435(a) suggests, a waiver of immunity generally extends "only to the extent of the insurance obtained." *Evans v. Housing Auth. of Raleigh*, 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004). As a result, "immunity is waived only to the extent that [the insured] is indemnified by insurance for negligence or tort." *Overcash v. Statesville Bd. of Educ.*, 83 N.C. App. 21, 23-25; 348 S.E.2d 524, 526-27 (1986). Thus, both the purchase of a bond and the purchase of liability insurance only operate as a waiver of governmental immunity to the extent of the coverage provided by those insuring instruments.

### 1. Purchase of a Surety Bond

[4] As the record clearly reflects, given that Sheriff Cochran, in compliance with N.C. Gen. Stat. § 162-8, purchased a bond from Western Surety on 4 December 2006 and given that Western Surety has been joined as a party to this action, Sheriff Cochran has waived governmental immunity "to the extent of the amount of the bond." In seeking to persuade us that the purchase of the Western Surety bond did not operate to waive Sheriff Cochran's right to assert a defense of governmental immunity in this case, Defendants argue that claims of the nature asserted by Plaintiff are not covered by Sheriff Cochran's bond.[1] We disagree.

---

1. In support of this argument, Defendants point to affidavits suggesting that Western Surety appropriately denied coverage on the basis of the relevant bond language. However, as plaintiff correctly argued before the trial court and asserts before us, the

**WHITE v. COCHRAN**

[229 N.C. App. 183 (2013)]

As is required by N.C. Gen. Stat. § 162-8, the bond purchased by Sheriff Cochran ensures that he

> shall in all things faithfully perform the duties of his office and shall honestly account for all moneys and effects that may come into his hands in his official capacity during the said term, then this obligation to be void, otherwise to remain in full force and effect.

Although Defendants argue that the provisions of the Western Surety bond do not cover claims such as those advanced by Plaintiff, they never explain why Plaintiff's allegations fail to implicate the extent to which Sheriff Cochran failed to "faithfully perform the duties of his office." In addition, Defendants' assertion conflicts with relevant decisions of the Supreme Court, which hold that "[t]he last clause of [N.C. Gen. Stat. § 58-76-5] has been held to enlarge the conditions of the official bond to extend to all official duties of the office." *State ex rel. Williams v. Adams*, 288 N.C. 501, 504, 219 S.E.2d 198, 200 (1975) (citing *Price v. Honeycutt*, 216 N.C. 270, 275, 4 S.E.2d 611, 613 (1939)); *see also Sellers*, 149 N.C. App. at 624, 561 S.E.2d at 339 (stating that N.C. Gen. Stat. § 58-76-5 only gives a plaintiff "the right of action" and "does not relieve [him] of the burden of proving that defendants either intentionally engaged in neglect, misconduct or misbehavior while performing their custodial duties, or that they acted negligently in performing those duties despite a duty to do otherwise"). As a result, a sheriff's official bond has been found applicable to claims "for wrongful death caused by the negligence of the defendant officers in not providing medical attention for the plaintiff's intestate," *Williams*, 288 N.C. at 505, 219 S.E.2d at 200, and to claims for false arrest involving the use of excessive force, *Price*, 216 N.C. at 276, 4 S.E.2d at 615. In view of the fact that Plaintiff has alleged that Sheriff Cochran wrongfully terminated her employment in retaliation for her decision to file a workers' compensation claim and the fact that acting in that matter would constitute a failure to properly perform his official duties,[2] we have no choice but to conclude that Plaintiff's

statements in these affidavits are not competent evidence as to the scope of the coverage of the Western Surety bond. *Old S. Life Ins. Co. v. Bank of North Carolina*, 36 N.C. App. 18, 32, 244 S.E.2d 264, 272 (1978) (stating that "the assertion in defendant's . . . affidavit that the All States' CD was security for III's loan is incompetent as it adds to or varies the terms of the promissory note and the CD").

2. We do not, of course, wish to be understood as expressing an opinion as to whether Plaintiff's allegations have any merit, since we are, as we have noted above, required to base our decision in this case on the information contained in the record taken in the light most favorable to Plaintiff. A trier of fact, after the completion of the requisite procedural steps, may well conclude that Plaintiff's claims lack merit as a factual matter.

claim, if supported by adequate proof, comes within the scope of Sheriff Cochran's official duties.

## 2. Purchase of Liability Insurance

**[5]** Similarly, Defendants argue that the decision by Swain County to purchase liability insurance did not operate to waive Sheriff Cochran's right to assert a governmental immunity defense on the grounds that the policies on which Plaintiff relies did not provide him with coverage against Plaintiff's claims. More specifically, Defendants argue that, since the Argonaut policy had terminated and the extended reporting period provided for in that policy had ended before Plaintiff asserted her claim and since the NCACC policy had not come into effect as of the date upon which Plaintiff's claim arose, Sheriff Cochran did not have coverage against Plaintiff's claim under either policy. Secondly, Defendants argue that Plaintiff's claim is specifically excluded from coverage under an exclusion obviating any necessity for the carrier to provide coverage relating to a proceeding before the Equal Employment Opportunity Commission or some similar state proceeding. We do not find either argument persuasive.

### a. Interpretation of Insurance Policies

A determination of the extent to which either the Argonaut policy or the NCACC policy provides coverage to Sheriff Cochran relating to Plaintiff's claims requires us to interpret the effective date and notice provisions contained in each policy. The interpretation of a contract of insurance is a question of law. *Old Line Life Ins. Co. of Am. v. Bollinger*, 161 N.C. App. 734, 736, 589 S.E.2d 411, 412 (2003) (citing *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970)). The traditional rules of contract construction are only useful in the event that relevant policy language is ambiguous. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 10, 692 S.E.2d 605, 612 (2010). "To be ambiguous, the language of an insurance policy provision must, 'in the opinion of the court, [be] fairly and reasonably susceptible to either of the constructions for which the parties contend.' " *Id.* (quoting *Wachovia Bank & Trust Co.*, 276 N.C. at 354, 172 S.E.2d at 522) (alteration in original). As a result of the fact that the relevant language in both policies is clear and unambiguous, we need not resort to rules of construction in order to resolve the issue before us in this case. *Houpe v. City of Statesville*, 128 N.C. App. 334, 342, 497 S.E.2d 82, 88 (stating that, "[w]hen language is clear and unambiguous, . . . a policy provision will be accorded its plain meaning) (citing *Wachovia Bank & Trust Co.*, 276 N.C. at 354, 172 S.E.2d at 522)), *disc. review denied*, 348 N.C. 72, 505 S.E.2d

871 (1998). As a result, we will now look at the relevant policy language in order to determine whether either the Argonaut policy or the NCACC policy provides Sheriff Cochran with coverage against Plaintiff's claims.

## b. Timeliness of Notice

In their brief, Defendants argue that the Argonaut policy is a "claims based" policy and that Plaintiff failed to provide notice of her claim within the policy period and related extended reporting period.[3] More specifically, Defendants argue that Plaintiff did not assert her claim until she filed her complaint in this case on 8 October 2009, a date which came slightly over one month after the end of the extended reporting period specified in the policy.[4] We do not find this argument persuasive.

According to the Argonaut policy, a claim arising from a "wrongful act"[5] has been asserted in a timely manner "if a claim for 'damages'[6] is first made in writing against any insured during the policy period or any Extended Reporting Period," with "[a] claim by a person or organization seeking 'damages' . . . deemed to have been made when written notice of such claim is received by any insured or by [Argonaut], whichever comes first." As a result, the only prerequisites set out in the relevant policy language for the provision of proper notice are that it be in writing and that it provide notice of the claim which the claimant seeks to assert against the insured. Nothing in the relevant policy language indicates that the required notice must take the form of the initiation of a civil action as contended for by Defendants, so we conclude that, as long as Plaintiff informed Sheriff Cochran in writing of the nature of her

---

3. Although Defendants describe the Argonaut policy as a "claims based" policy, we believe that they are actually describing it as a "claims-made" policy. A "claims-made" policy is "[a]n agreement to indemnify against all claims made during a specified period, regardless of when the incidents that gave rise to the claims occurred." *Black's Law Dictionary* 877 (9th ed. 2009). The Argonaut policy provides that the "wrongful act" must occur during the policy period and that the claim must be asserted during the policy period or the extended reporting period. As a result, the Argonaut policy has features characteristic of a "claims made" policy without technically being one.

4. The NCACC policy is an "occurrence" policy, given that it covers "any loss from an event that occurs within the policy period, regardless of when the claim is made." *Black's Law Dictionary* 878 (9th ed. 2009). As a result of the fact that the events underlying Plaintiff's claim against Sheriff Cochran occurred prior to the effective date of the NCACC policy, it clearly does not provide any basis for a determination that Sheriff Cochran waived his right to assert a defense of governmental immunity.

5. A "wrongful act" is defined in the Argonaut policy as "any act, error or omission by an insured" or "flowing from or originating out of a 'law enforcement activity.'"

6. "Damages" are defined in the Argonaut policy as "money damages."

claim in a timely manner, Plaintiff will have adequately complied with the notice provision of the Argonaut policy.

As the record clearly reflects, Plaintiff filed a complaint alleging retaliatory discharge stemming from her decision to file a workers' compensation claim with the Department of Labor, which provided the Human Resources Manager of the Swain County Sheriff's Department with notice of Plaintiff's complaint by means of a letter dated 5 June 2009. In addition, facsimile transmissions requesting information were sent to Swain County's Human Resources Manager and to the Sheriff's Department by a Department of Labor investigator on 8 June and 9 June 2009. As is reflected in letters to the Department of Labor investigator from the attorney for Swain County dated 18 June and 25 June 2009, Sheriff Cochran and other county officials were clearly aware of both the existence and nature of Plaintiff's claim by the end of June 2009. As a result of the fact that the Argonaut policy ended on 1 July 2009 and the fact that the Extended Reporting Period set out in the Argonaut Policy ended on 1 September 2009, Sheriff Cochran clearly received notice of Plaintiff's claim in a form consistent with that required by the applicable policy language before the Argonaut policy expired, and considerably in advance of the end of the Extended Reporting Period. Thus, Defendants' argument that the Argonaut policy does not afford coverage for Plaintiff's claim against Sheriff Cochran is without merit.

### c. Applicability of EEOC Exclusion

Finally, Defendants argue that Sheriff Cochran is not precluded from asserting a defense of governmental immunity on the basis of a policy provision excluding "[Equal Employment Opportunity Commission] hearings or similar proceedings conducted by state agencies or commissioners" from the scope of the coverage afforded by the Argonaut policy. Defendants have not, however, offered any support for their contention that Plaintiff's retaliatory discharge claim is either an EEOC claim or a similar state proceeding and, instead, simply refer to Plaintiff's claim as an EEOC claim on a number of occasions in their brief. Aside from the fact that Defendants' failure to provide any argumentation in support of their position would permit us to deem this aspect of their challenge to the trial court's order to have been abandoned, *Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, 358, 673 S.E.2d 667, 674 (stating that "[w]e note that Defendants include no authority in their brief in support of several of the following arguments, which constitutes a violation of [N.C.R. App. P. Rule 28(b)(6)] and subjects these arguments to dismissal") (citing *Dogwood Dev. & Mgmt. Co.,*

*LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008)), *disc. review denied*, 363 N.C. 663, 687 S.E.2d 296 (2009), we need not rest our decision on this ground given our conclusion that the claims asserted in Plaintiff's complaint do not constitute an EEOC or similar state proceeding for purposes of the relevant policy language. The EEOC is responsible for "enforcing federal laws that make it illegal to discriminate against a job applicant or an employee because of the person's race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information." http://www.eeoc.gov/eeoc/index.cfm (last visited 8 August 2013). On the other hand, the Department of Labor is responsible for enforcing the Retaliatory Employment Discrimination Act, which is "intended to prevent employer retaliation from having a chilling effect upon an employee's exercise of his or her statutory rights under the Workers' Compensation Act," *Whiting v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005), or other specific statutory provisions. Simply put, the EEOC serves to protect individuals from discrimination based on certain characteristics or affiliations while the Department of Labor serves to protect individuals from retaliation stemming from their decision to exercise specific statutory rights. In view of the fact that the purposes sought to be served by proceedings before the Department of Labor differ substantially from the purposes sought to be served by proceedings before the EEOC, we have no difficulty in concluding that Plaintiff's claim is simply not an "EEOC proceeding or similar proceeding conducted by state agencies or commissioners" excluded from coverage under the Argonaut policy. As a result, neither of Defendants' contentions to the effect that the relevant policies did not provide Sheriff Cochran with coverage relating to Plaintiff's claim have merit, thereby establishing that Defendants were not entitled to the entry of judgment as a matter of law in their favor on the basis of governmental immunity considerations.

### III. Conclusion

Thus, for the reasons set forth above, none of Defendants' challenges to the trial court's order have merit. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges ROBERT C. HUNTER and STROUD concur.